UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JOSHUA THOMAS FRIAR, | Case No. 2:20-cv-01621-AA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MARK NOOTH, East-side Administrator; TYLER BLEWETT, Superintendent TRCI; SHANNON JOHNSTON, Medical Services Manager TRCI; LINDA GRUENWALD, Nurse Practitioner TRCI; NURSE PARKS, Nurse at TRCI; CATHERINE THURMOND, Nurse at TRCI; OFFICER SCOTT YEAGER, Security Guard TRCI; JOE BUGHER, the Assistant Director of Health Services; CHRISTOPHER DIGIULIO, Medical Director; Jane Doe, Behavioral Health Services; OREGON DEPARTMENT OF CORRECTIONS (O.D.O.C.), sued in their individual and or official capacity as appropriate, | |
| Defendants. | |

AIKEN, District Judge.

Plaintiff, an inmate in the custody of the Oregon Department of Corrections (ODOC), filed this action pursuant to 42 U.S.C. § 1983 and alleged violations of his rights under the First

1 -    OPINION AND ORDER

and Eighth Amendments. This Court previously dismissed all claims except those brought against defendants Linda Gruenwald and Officer Scott Yeager, and these defendants now move for summary judgment. Plaintiff fails to present evidence raising a genuine issue of material fact to defeat summary judgment, and defendants' motion is granted.

## BACKGROUND

In the fall of 2019, Nurse Practitioner (NP) Gruenwald obtained approval from the ODOC Therapeutic Level of Care Committee to refer plaintiff to a specialist for his recurring throat pain. Roberts Decl. ¶¶ 6-10 (ECF No. 72). The specialist diagnosed plaintiff with chronic tonsilitis and recommended a tonsillectomy. *Id.* ¶ 10.

On November 7, 2019, plaintiff underwent a tonsillectomy at Good Shepherd Medical Center in Hermiston, Oregon. *Id.* ¶ 11. When he returned to Two Rivers Correctional Institution, plaintiff was required to move from his housing unit to the infirmary for post-surgical monitoring. *Id.* According to plaintiff, he was required to "pack up his belongings and transport them" to the housing unit office before moving to the infirmary, Compl. ¶ 2, even though he was medically restricted from performing more than "limited activity" for two weeks. *See* Roberts Decl. ¶ 11 & Att. 1 at 30 (physician's orders); *see also id.* Att. 1 at 32 (discharge instructions indicating no "heavy lifting or straining for two weeks following surgery").

NP Gruenwald ordered a liquid diet for plaintiff, with advancement to soft foods in the following fourteen days. *Id*. ¶ 11. To alleviate plaintiff's pain, NP Gruenwald ordered a one-time administration of Oxycodone, Norco every six hours for the following three days, and Ultram every four to six hours until November 20, 2019. *Id*.

On November 8, 2019, plaintiff requested pain medication at 2:40 a.m. His request was denied because he had received pain medication a few hours earlier, at 11:23 p.m., and he could

not receive another dose for six hours. *Id*. ¶ 12. Plaintiff received his next dose of medication at 9:30 a.m. *Id.* Throughout the next two days, plaintiff complained that his throat hurt, requested pain medication regularly, and spoke in a whisper. Roberts Decl. ¶¶ 12-13.

On November 10, 2019, plaintiff reported that his throat was beginning to feel better, and by the next day, plaintiff was more active, participated in yoga, and began speaking in a normal voice. *Id*. ¶¶ 14-15.

On November 12, 2019, plaintiff reported that he felt well enough to be discharged from the infirmary. He remained in the infirmary due to the risk of bleeding after surgery. *Id.* ¶ 16.

On November 14, 2019, plaintiff asked for a soft diet and requested pain medication with less frequency. Roberts Decl. ¶ 18. Plaintiff had no complaints from November 15, 2019, through November 20, 2019 and declined pain medication on several occasions. *Id*. ¶¶ 19-24.

On November 21, 2019, plaintiff was discharged from the infirmary and returned to general population. *Id*. ¶ 25.

On November 26, 2019, plaintiff had a post-operative follow-up appointment with the specialist, who noted that plaintiff's throat was "well healed" and released him to "normal diet and activities." *Id.* ¶ 26 & Att. 1 at 34.

DISCUSSION

NP Gruenwald and Officer Yeager move for summary judgment on grounds that the undisputed evidence does not demonstrate deliberate indifference to plaintiff's serious medical needs or retaliation against him for engaging in protected conduct. To prevail on their motion, defendants must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

3 -    OPINION AND ORDER

(1986). The Court must construe the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

    A. Deliberate Indifference

In his first claim, plaintiff alleges that NP Gruenwald exhibited deliberate indifference to his health and safety when she "forced" plaintiff into the infirmary and ordered him to "perform physical labor" within one hour of surgery, subjected him to inhumane conditions of confinement in the infirmary, and denied him pain medication for extended periods of time. Compl. ¶¶ 104, 112. Plaintiff also alleges that Officer Scott Yeager exhibited deliberate indifference to his health by "purposefully interfering and delaying prescribed medical treatment." *Id.* ¶ 105.

Prison officials and physicians violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A prison official acts with 'deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.* Deliberate indifference may be manifested by denying, delaying, or intentionally interfering with medical treatment or by the manner in which prison physicians provide medical care. *Gamble*, 429 U.S. at 104-05; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).

Plaintiff first alleges that someone from "medical" forced him to move his belongings into the housing unit office before he was admitted to the infirmary, despite the fact that he was

ordered not to engage in strenuous activity for two weeks.[1] Notably, plaintiff does not identify what items he was required to move or explain why those items weighed "hundreds of pounds." Pl.'s Response to Defs.' Mot. at 8 (ECF No. 84).[2] Regardless, plaintiff presents no evidence suggesting that NP Gruenwald was the ODOC official who ordered him to move his belongings or that she directed plaintiff to perform strenuous activity. Rather, the record reflects that NP Gruenwald simply ordered plaintiff to stay in the infirmary due to a heightened risk of bleeding after his surgery. Roberts Decl. ¶ 11 & Att. 1 at 9, 16-17. Further, although moving his belonging may have caused discomfort, plaintiff fails to show that it posed an excessive risk to his health or safety or delayed his recovery from surgery in any way.

Next, plaintiff alleges that NP Gruenwald subjected him to freezing temperatures and 24-hour bright lights in the infirmary. Plaintiff presents no evidence suggesting that NP Gruenwald is responsible for these conditions or that she refused a request to address them. Further, the medical notes reflect no complaints about plaintiff's medical care, the temperature, or the lighting while plaintiff was housed in the infirmary. *See id.* Att. 1 at 5-9. Although plaintiff contends that he sent a letter to "medical management" on November 8, 2019 complaining of these conditions, the record does not show that plaintiff complained to NP Gruenwald or

---

[1] Defendants emphasize that, in his responses to defendants' discovery requests, plaintiff admitted that he was not ordered to move his belongings to the infirmary. *See* Washington Decl. & Exs. 1-3 (ECF No. 70). In response, plaintiff claims that he was ordered to transport his belongings to the housing unit, not the infirmary, and that his discovery responses do not contradict his claim. *See* Compl. ¶ 2 (alleging that plaintiff was ordered "to pack his belongings and transport them down stairs to the unit office"). Plaintiff also moves for issuance of a third-party subpoena to Sgt. Harrington, who would allegedly confirm that plaintiff was ordered to pack and transport his belongings to the housing unit office. For purposes of this motion, I accept that plaintiff was ordered to move his belongings to the housing unit office, and issuance of a subpoena is unnecessary.

[2] Notably, in response to defendants' discovery requests, plaintiff refused to identify the person who ordered him to move his belongings or the items he was required to move. Washington Decl. Ex. 2 at 1-2.

5 -    OPINION AND ORDER

infirmary staff about the temperature or the lighting. Pl.'s Response to Defs.' Mot. at 12; Roberts Decl. Att. 1. Moreover, plaintiff fails to show that that he suffered harm from the conditions, given that plaintiff's temperature was normal during his stay in the infirmary, his condition improved within several days, and he was fully healed within three weeks. Roberts. Decl. ¶¶ 15-24 & Att. 1 at 34, 42.

Finally, plaintiff alleges that he was denied pain medication for ten hours on November 8, 2019, despite several requests for pain relief. The record reflects that plaintiff received pain medication at 11:23 p.m. on November 7, 2019 and did not receive another dose until 9:30 a.m. the next morning. *Id.* ¶ 12 & Att. 1 at 39. NP Gruenwald had prescribed pain medication every six hours, as needed, and plaintiff could have received another dose at approximately 5:30 a.m. instead of 9:30 a.m. *Id.* ¶ 11. Regardless, no evidence suggests that NP Gruenwald delayed the administration of his pain medication, and a four-hour delay in receiving pain medication implies negligence, at most, and does not rise to the level of a constitutional violation.

Plaintiff likewise fails to establish deliberate indifference on the part of Officer Yeager. Plaintiff alleges that on November 8, 2019 at approximately 6:00 a.m., he asked Officer Yeager to contact a nurse and request his pain medication. Officer Yeager allegedly stated, "That's not my job." Compl. ¶ 36. Officer Yeager contends that he told plaintiff it was not his job to administer pain medication and that he would notify a nurse about plaintiff's request. It is unclear whether Officer Yeager notified a nurse about plaintiff's request for pain medication. Even if he failed to do so, his conduct constitutes negligence, at most.

Accordingly, plaintiff fails to show that defendants were deliberately indifferent to his serious medical needs, and summary judgment is granted in their favor on plaintiff's Eighth Amendment claims.

### B. First Amendment Retaliation

In his second claim, plaintiff alleges that Officer Yeager retaliated against plaintiff by threatening him with segregation for "lying" about being able to speak in a normal voice. Compl. ¶ 124. Plaintiff contends that Officer Yeager issued this threat because plaintiff had complained about his "interference" with plaintiff's pain medication.

Plaintiff's claim arises from an incident that occurred on November 9, 2019. On that date, plaintiff pressed the intercom button in his cell to inform Officer Yeager that he had a "call-out" and needed to be let out of his cell. Officer Yeager avers that plaintiff spoke in a "loud, clear, and normal voice" even though he previously had spoken in a whisper, and Officer Yeager suspected plaintiff might be exaggerating his symptoms to manipulate the length of his stay in the infirmary. Yeager Decl. at 3.

After plaintiff was released from his cell, he began to walk by the nurse's station, where Officer Yeager was standing. Officer Yeager confronted plaintiff about speaking in a normal voice and allegedly used profanity. Compl. ¶ 51. Officer Yeager allegedly said that he knew plaintiff could "talk fine" and warned plaintiff that if he "lied" about being able to speak normally, Officer Yeager would "lock" him up for "false information." *Id.* Officer Yeager admits that he confronted plaintiff about speaking in a normal voice and told plaintiff that he could receive a Conduct Order, a form of discipline, for lying. Yeager Decl. at 3. Ultimately, Officer Yeager did not issue a Conduct Order or take any action against plaintiff.

To state a viable claim of First Amendment retaliation, plaintiff must allege five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). The evidence of record does not establish these elements.

Although Officer Yeager arguably overacted, he took no adverse action against plaintiff. It is undisputed that Officer Yeager did not issue any type of disciplinary report and plaintiff received no disciplinary sanction for allegedly lying about his ability to speak in a normal voice. Yeager Decl. at 3-4. Even if Officer Yeager's alleged threat of disciplinary action could be considered an adverse action, no evidence suggests that Officer Yeager threatened plaintiff "because of" protected conduct. Plaintiff relies on his November 8, 2019 letter to "medical management," which allegedly complained about Officer Yeager's "refusal" to notify medical staff about plaintiff's request for pain medication. Pl.'s Response to Defs.' Mot. at 6, 12. However, plaintiff gave the letter to Nurse Thurmond on November 8, and plaintiff presents no evidence suggesting that Officer Yeager knew about the letter or its contents as of November 9. *See* Compl. ¶¶ 45-46; Pl.'s Response to Defs.' Mot. at 6, 12.

Accordingly, summary judgment is granted in favor of Officer Yeager on plaintiff's claim of First Amendment retaliation.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 69) is GRANTED, and plaintiff's Motion for Leave to Issue Subpoenas (ECF No. 82) is DENIED. This action is DISMISSED. IT IS SO ORDERED.

DATED this 22nd day of March, 2022.

                                    /s/Ann Aiken
                                      Ann Aiken
                              United States District Judge